UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY SMITH,

      Petitioner,

v.

CHRIS KING, *warden*,

      Respondent.

Case No. 18-12070
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING SMITH'S AMENDED HABEAS
PETITION [17], MOTION FOR SANCTIONS, [25] AND MOTION FOR
AN EVIDENTIARY HEARING [26]**

---

In December 2013, Matthew Ridley traveled to a vacant Detroit house with a man he knew as "Buddy." The plan was to check out the house and see if it would be a good location to sell drugs. But shortly after the pair entered, Buddy shot Ridley in the back of the head. Wounded, Ridley ran to a neighbor's home. That neighbor called the police, and Ridley was rushed to a hospital where he fell into a coma. Later, after Ridley had recovered, he identified "Buddy" as Henry Smith. In time, Smith was charged and convicted of assault with intent to commit murder under Michigan Compiled Laws § 750.83, along with several firearm offenses. He is currently serving a sentence of 25–45 years' imprisonment at Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan.

On July 2, 2018, Smith filed a habeas petition under 28 U.S.C. § 2254. (ECF No. 1.) Smith then requested (ECF No. 9) and was granted a stay of proceedings (ECF No. 14) so that he could exhaust additional claims in the state courts. After

completing state post-conviction review, Smith successfully moved to reopen his habeas case (ECF No. 16) and filed an amended petition (ECF No. 17).

The amended petition raises nine claims with numerous subparts and consists of all the claims that Smith unsuccessfully raised in the state courts on direct appeal and in his motion for relief from judgment. (*Id.*) Because the claims are without merit, the Court DENIES the amended petition. (*Id.*) This, in essence, moots Smith's pending motion for sanctions (ECF No. 25) and for an evidentiary hearing (ECF No. 26), which are also DENIED.

## I. Background

On the evening of December 6, 2013, Ike Fields was walking to his car outside his home on Meade Street in Detroit when he saw a man, later identified as Matthew Ridley, stumble out of a vacant house across the street. (ECF No. 11-10, PageID.668 (Police Report).) Ridley walked over to Fields, told him that he had been shot, and asked for a ride to the housing project across the bridge. (*Id.*) Instead, Fields told a family member to call 911 and instructed Ridley to sit on his porch steps. (*Id.*) While waiting for help to arrive, Ridley told Fields that he knew who had shot him but did not provide a name. (*Id.*)

Ridley subsequently informed the responding officers that he had walked to the vacant house with someone he only knew as "Buddy" to decide whether it would be a good place for a drug house. (*Id.*) Ridley said that Buddy shot him in the back of the head after they entered the house with a silver revolver, possibly a .22 caliber. (*Id.*) He also told the officers that Buddy lived in the same project as him and that he

could identify the unit. (*Id.*)  Ridley was then taken to the hospital, where he fell into a coma.

Over a month later, on January 8, 2014, Ridley had recovered from his coma and made another statement to the police at the hospital. (ECF No. 11-10, PageID.664–67 (Ridley's Police Statement).) He again identified the shooter as Buddy, someone he had known for four or five months and saw nearly every day. (*Id.* at PageID.664.) Contrary to what he told police at the scene, however, Ridley said that Buddy had his girlfriend drive them to the vacant house. (*Id.*) He said that Buddy started showing him around the house when, all of the sudden, he heard a bang and felt a burning pain in his head. (*Id.*) He then turned around and saw Buddy holding a gun. (*Id.*) So, Ridley said, he ran outside to a nearby house, passing Buddy's girlfriend's car on the way. (*Id.*) The next thing he knew he woke up in the hospital. (*Id.*) Ridley also told the police that he owed Buddy about a hundred dollars for drugs. (*Id.* at PageID.666.) And during a single-photograph identification procedure conducted at the hospital, Ridley was able to identify Henry Smith as "Buddy." (ECF No. 23-12, PageID.1824 (Police Report).)

A preliminary examination was held on April 25, 2014. Ridley's testimony at the exam largely tracked what he told police at the hospital, and the court found that there was sufficient probable cause to support an arrest. (ECF No. 11-2 at PageID.344.)

Two issues relevant to Smith's habeas claims were addressed at the final pretrial hearing on September 26, 2014. (ECF No. 11-5.) First, the Court conducted a

3

waiver colloquy during which Smith voluntarily chose to waive his right to a jury trial. (ECF No. 11-5, at PageID.369–373.) And second, defense counsel withdrew his request for an expert to review Ridley's medical records, stating that he could not find anything in the records indicating that the part of the brain which stores memory was injured, and thus he could not justify the need for expert testimony. (*Id.* at PageID.378–379.)

## A. The Trial

Smith's bench trial began on October 31, 2014. There, Fields—the neighbor— testified that Ridley stumbled from the abandoned house to his porch, bleeding from a gunshot wound to the head. (ECF No. 11-6, PageID.402.) He testified that Ridley said he knew who shot him, but did not say who. (*Id.* at PageID.402–403.) Further, Fields testified that he did not see a car parked in front of the vacant house. (*Id.* at PageID.410.) On cross-examination, Fields testified that the abandoned house had been used by squatters in the past, and that it was missing doors and windows, allowing anyone to enter. (*Id.* at PageID.417–418.) On re-direct examination, Fields testified that on the date of the incident the house was "empty and abandoned." (*Id.* at PageID.418.)

Next, Ridley testified that he knew Smith as "Buddy" from the Hamtramck Projects and sold drugs for him. (*Id.* at PageID.422.) He testified that they spent time together nearly every day and argued about a $100 debt the day before the shooting. (*Id.* at PageID.422–423.) On the evening of the incident, he spoke with Smith about "making everything right" regarding the debt. (*Id.* at PageID.427–428.) He then

4

testified that he accompanied Smith to a house on Meade, where Smith planned to sell drugs. (*Id.* at PageID.428–429.) Ridely also said that a woman he had only seen once or twice beforehand drove them to the house but never got out of the car. (*Id.*)

Ridley testified that when he turned to leave the house, he was shot in the head. (*Id.* at PageID.433–434.) Ridley explained how he fled to a neighboring house and told a man that he had been shot in the head and needed to get home. (*Id.* at PageID.434.) Ridley testified that when police arrived, he told them "Buddy" shot him and described what Buddy looked like. (*Id.* at PageID.436.) He also clarified that no one had suggested Buddy was the one who shot him—it was his own belief. (*Id.*)

On cross-examination, defense counsel sought to undermine Ridley's credibility by questioning him about his brain injury and his prior inconsistent statements. Ridley conceded his memory was impaired. (*Id.* at PageID.470 ("I don't have a perfect memory, due to me being shot.").) He admitted he frequently smoked marijuana and that he was currently taking pain medication as well as medication to aid in recovering his memory. (*Id.* at PageID.443–450.)

Finally, Ridley denied that he previously told anyone that he had walked over to the abandoned house with Smith rather than being driven there. (*Id.* at PageID.453–455.) But he conceded that, due to his injury, he could not remember what kind of car they drove to the house or where he sat in it. (*Id.*) Ridley also testified that he did not see who shot him, but he assumed it was Smith since he was the only other person present. (*Id.* at PageID.460.) He said that he never knew where Smith lived, since they only met up in the projects, and denied ever telling the responding

5

police that he could take them to Smith's residence. (*Id.* at PageID.461.) Last, Ridley admitted he believed his issues with Smith had subsided, that Smith had never threatened him, and that he had no reason to suspect Smith would shoot him. (*Id.* at PageID.466–467.)

The court also heard testimony from Officers Todd Zamarripa, Robert Douglas, and Willie Robinson. Each had responded to the scene and observed Ridley bleeding from the head on the front porch. (*Id.* at PageID.477, 491, 508.) All three testified that Ridley said the shooting occurred at a vacant house, and Douglas and Robinson specifically stated that Ridley identified "Buddy" as the shooter. (*Id.* at PageID.477, 493, 511.) Douglas further testified that Ridley described Buddy as a short, fat man with a bald head (*id.* at PageID.493), said they had walked to the vacant house together (*id.*), and claimed to know where Buddy lived but never provided an address or led officers to a location. (*Id.* at PageID.499–500).

Lastly, Smith testified. He claimed that he knew Ridley from the neighborhood and that they sold marijuana together, but denied that Ridley owed him money. (ECF No. 11-8, PageID.547–550.) He testified that on the night of the incident, he was in the Hamtramck Projects moving between the apartments of Kimberly Smith and Angie Anderson, two women he identified as alibi witnesses who lived adjacent to each other. (*Id.* at PageID.553–555.) Neither testified at trial. (*Id.* at PageID.566.) On cross-examination the prosecutor confronted Smith with his recorded calls from jail. In one call, Smith told a friend of his to "tell them bitches to make sure their asses

are in line." (*Id.* at PageID.567.) In another call, he told his child's mother to "make sure them bitches play their roles." (*Id.* at PageID.569.)

After closing arguments, the trial court rendered its decision, finding Smith guilty on all charges. (ECF No. 11-8, at PageID.608–609.) It reasoned that Ridley's testimony was credible despite some inconsistencies and his brain injury. (*Id.* at PageID.599–601.) On the other hand, it found Smith's testimony not credible, particularly in light of his recorded jail calls threatening potential witnesses. (*Id.* at PageID.607–608).

## B. Appeal and Post-Conviction Relief

Following sentencing, Smith appealed, arguing that his counsel was ineffective for failing to obtain an expert witness and for failing to sufficiently cross-examine Ridley. (*See* ECF No.11-10.) Smith also filed a *pro se* supplemental brief raising four additional claims, including that: (1) the trial court erred by denying a directed verdict and excluding testimony about witness bias; (2) the prosecution failed to investigate or disclose exculpatory evidence; (3) trial counsel gave flawed advice about waiving a jury trial, failed to present medical evidence, and did not develop key defenses; and (4) the cumulative effect of all these errors denied him a fair proceeding. (*Id.* at PageID.710.)

The Michigan Court of Appeals affirmed Smith's convictions in an unpublished opinion. *People v. Smith*, No. 328247, 2017 WL 378751, at *1 (Mich. Ct. App. Jan. 26, 2017), *available at* (ECF No. 11-10, PageID.632–638). Smith filed an application for leave to appeal in the Michigan Supreme Court (ECF No. 11-11, PageID.766), which

7

was denied by standard form order. *People v. Smith*, 901 N.W.2d 107 (Mich. 2017) (unpublished table decision), *available at* (ECF No. 11-11, PageID.765). Smith then filed his initial habeas petition in federal court, raising the same claims he raised on direct appeal. (ECF No. 1.) On the same day, Smith also filed a motion to stay the federal proceedings so that he could return to state court and exhaust additional claims, (ECF No. 9, PageID.234–236) which the Court granted (ECF No. 14).

Smith then returned to the trial court and filed a motion for relief from judgment raising five new or additional claims. (ECF No. 23-12, PageID.1765–1766.) More specifically, he alleged that: (1) trial counsel was ineffective; (2) the prosecution failed to disclose material evidence; (3) newly discovered evidence warranted a new trial or evidentiary hearing; (4) cumulative error rendered the proceeding unfair; and (5) appellate counsel was ineffective. (*Id.*)

The trial court denied Smith's motion reasoning that defense counsel's performance did not fall below constitutional standards, the prosecutorial misconduct claims were either meritless or procedurally barred, the newly discovered evidence did not justify a new trial, and the asserted errors, whether considered individually or cumulatively, were meritless and did not warrant relief. (ECF No. 23-15.) The Michigan Court of Appeals then denied Smith's application for leave to appeal because Smith "failed to establish that the trial court erred in denying the motion for relief from judgment." (ECF No. 23-17, PageID.2028.) The Michigan Supreme Court likewise denied relief by standard form order. *People v. Smith*, 981 N.W.2d 478 (Mich. 2022) (unpublished table decision), *available at* (ECF No. 23-18, PageID.2088).

Smith then returned to this Court and filed an amended habeas petition raising a total of nine claims, all of which he raised either on direct appeal or in his motion for post-conviction relief. (ECF No. 17.)

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act ("AEDPA") "confirm[s] that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). Thus, if a claim was already "adjudicated on the merits in State court," this Court cannot grant relief on the basis of that claim unless the habeas petitioner "show[s] that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)). The Supreme Court has emphasized that "an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 101 (quoting *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Therefore, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. This is "meant to be" a "difficult [standard] to meet." *Id*. at 102. Additionally, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), with review being "limited to the record that was before the state court," *Cullen*, 563 U.S. at 181.

9

Here, because the state courts adjudicated all of Smith's claims on the merits, AEDPA deference applies. With that in mind, the Court will address the merits of Smith's claims.

### III. Analysis

#### A. Ineffective Assistance of Counsel (Claims 1, 2, 5, and 7)

Smith raises numerous allegations of ineffective assistance of trial counsel within his first, second, fifth, and seventh claims for habeas relief.

An ineffective assistance of counsel claim has two components. A petitioner must show (1) that counsel's performance was deficient, and (2) that the deficiency resulted in prejudice to the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is judged under a "highly deferential" reasonableness standard. *Id.* at 688–89. And prejudice occurs only when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Simply put, the *Strickland* standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013)).

And when a state court addresses an ineffective assistance of counsel claim on the merits, obtaining relief is even more difficult. "The standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S.

12, 15 (2013). Thus, "the question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105; *see also Cullen*, 563 U.S. at 188 (explaining that the "unreasonable application prong" can be satisfied only if a petitioner shows "there was no reasonable basis" for the state court's decision).

### 1. Failure to Obtain a Medical Expert

Starting with Smith's first claim, Smith asserts that his counsel performed deficiently by withdrawing his request for the appointment of a medical expert to challenge Ridley's memory. (*See* ECF No. 17, PageID.951 (Claim 1).)

The Michigan Court of Appeals rejected this claim because Smith "failed to rebut defense counsel's assertion that there was nothing in the medical records to warrant the appointment of an expert witness." (ECF No. 11-10, PageID.634 (citing *People v. Hoag*, 594 N.W.2d 57, 59 (Mich. 1999) (observing that the defendant "has the burden of establishing the factual predicate for his claim of ineffective assistance of counsel")).) Further, the court reasoned that defense counsel did "extensively cross-examine[] the victim concerning the trauma to his brain" as well as "the discrepancies between the victim's trial testimony and prior statements to the police concerning the assault, and the extent to which the victim felt certain regarding his identification of defendant as the assailant." (*Id.*) Finally, the court reasoned that even assuming Smith's trial counsel was deficient by not retaining an expert, Smith "failed to demonstrate how any such expert would have testified at trial" and thus "cannot show how the failure to procure an expert prejudiced him." (*Id.*)

11

This Court finds that the Michigan Court of Appeals reasonably applied the *Strickland* standard. To start, defendants face an uphill battle in bringing a *Strickland* claim that hinges on a purported failure to call an expert witness. *Dunn v. Reeves*, 594 U.S. 731, 739 (2021). "[S]trategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness." *Id.* (quoting *Harrington*, 562 U.S. at 104). And while defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary," those investigations are themselves retrospectively reviewed with a "heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. Here, at the final pretrial conference Smith's counsel explained his reasons for not pursuing his request for an expert, saying that his review of the voluminous medical records did not reveal any basis for the appointment of an expert on memory loss. (ECF No. 11-5, PageID.379–380.) Counsel even clarified with the trial court that he still intended on highlighting, based on "simple knowledge and general information in the public domain," that being shot in the head may cause brain trauma and affect memory. (*Id.* at PageID.380.) And Smith's counsel *did* attack Ridley's credibility through cross-examination, pointing to inconsistencies in his accounts of the incident and to his admissions that his memory was impacted by his brain injury. (*See* ECF No. 11-6, PageID.442–446, 450–452.) In short, counsel made a reasonable strategic decision.

The Michigan Court of Appeals also reasonably determined that Smith failed to show that the absence of an expert prejudiced him. Smith claims that an expert

would have testified that Ridley's account of the shooting might be unreliable. (ECF No. 17, PageID.952.) But this assertion is entirely speculation. Smith "did not identify an expert his trial counsel could have called or indicate what an expert could have testified that would have been relevant to his defense." *Lagrone v. Parris*, No. 23-5177, 2023 WL 5623279, at *4 (6th Cir. Aug. 7, 2023). Nor does he explain how expert testimony would have gone beyond the commonsense understanding that being shot in the head may cause brain trauma and affect memory, which his counsel did explain at trial without expert testimony. (ECF No. 11-5, PageID.380.) "The speculative impact of expert testimony is not enough to prove prejudice under *Strickland*." *Lagrone*, 2023 WL 5623279, at *4. Accordingly, the Michigan Court of Appeals reasonably rejected Smith's first claim.

Similarly, Smith asserts that his trial attorney was ineffective when he failed to "admit any of the admissible and highly relevant medical evidence" regarding the effects of Ridley's brain injury. (ECF No. 17, PageID.972 (Claim 5).) Smith attempts to support this claim by pointing to a few pages of Ridley's medical records (*id.* at PageID.1007) and an article from brainline.org about a memory disorder called "confabulation" (*id.* at PageID.1005). "This evidence," says Smith, was "easily discoverable at the time of trial" and shows a "connection between the frontal lobes, memory recall, confabulation, and false memories." (*Id.* at PageID.971.)

The Michigan Court of Appeals rejected this claim as unsupported by the record, reasoning:

> [Smith] ignores that counsel did in fact point out (1) the victim's identification of defendant was incorrect because of the victim's

significant brain injury, (2) the injuries that the victim still suffered at the time of the trial impacted his memory, and (3) the inconsistencies in the victim's recollection of the assault. Furthermore, trial counsel questioned the victim at length regarding his brain injury, ongoing physical defects, inability to remember some circumstances surrounding the shooting, inconsistent statements the victim had provided to the police, and the many medications that the victim still used.

(ECF No. 11-10, PageID.635.)

This Court agrees. As already detailed above, Smith's counsel did sufficiently challenge Ridley's credibility during trial. And Ridley readily admitted on the stand that his memory was diminished by the gunshot wound to his head. (*See* ECF No. 11-6, PageID.450–451; *id.* at PageID.452 ("I had a gunshot head to the brain. I was shot in my head and it [a]ffected my brain.").) The medical records Smith provided do not suggest that Ridley suffered any form of memory loss that he did not *already disclose* at trial. Nor does he proffer an expert prepared to connect Ridley's injury with confabulation.

So Smith has not shown that "there was no reasonable basis" for the state courts' ruling, and his habeas claim on this issue must fail. *See Cullen*, 563 U.S. at 188.

### 2. Failure to Properly Cross Examine Ridley

Next, Smith argues that his counsel was ineffective when he failed to "fully and fairly cross examine" Ridley regarding his prior inconsistent statements and poor memory. (ECF No. 17, PageID.954 (Claim 2).) Specifically, Smith contends that his counsel failed to point out that Ridley provided conflicting statements as to where he and the shooter first met, whether he knew where the shooter lived, and whether he ever saw the shooter holding a gun. (*Id.*)

The Michigan Court of Appeals rejected this claim on direct appeal, reasoning

that:

> Here, defense counsel questioned the victim concerning the following:
> the victim's use of a cane at the time of trial, the partial immobilization
> in the victim's left hand, the victim's comatose state for more than two
> weeks after the assault, the victim's couching of multiple direct-
> examination responses in the terms "to the best of [his] knowledge,"
> whether marijuana use affected the victim's brain, and whether the
> victim used heroin. Counsel elicited the victim's acknowledgment that
> on "certain" matters, some reason existed why he could not "remember[]
> things as clearly as [he] might"; the victim "smoked marijuana every
> day" for an unspecified period; the victim took between 10 and 11
> medications every day at the time of trial, including Amantadine to
> improve his brain functioning and pain medication; the day before the
> assault, some tension existed over a drug debt between defendant and
> the victim, but no tension existed on the day of the shooting; and the
> victim did not see defendant pull the trigger of the gun. Counsel
> repeatedly inquired of the victim whether he told anyone that he and
> defendant had walked to the vacant house on Meade, which the victim
> repeatedly denied, and counsel questioned the victim regarding his
> recollections of having driven to Meade.

(ECF No. 11-10, PageID.634.)

Indeed, the trial court even noted many of these inconsistencies and problems

with Ridley's testimony when it rendered its decision. (*See* ECF No. 11-8,

PageID.597–598 (discussing Ridley's brain injury and memory problems as well as

inconsistent testimony as to walking or diving to the scene); *id.* at PageID.600–601

(discussing the inconsistency regarding whether Ridley knew where Smith lived, as

well as the color of the revolver).) The trial court nevertheless found Ridley's

testimony to be credible. (*Id.* at PageID.601 ("And again, while this is an

inconsistency, I don't find it's a significant enough inconsistency to overcome . . . what

I thought was fairly compelling testimony of Mr. Ridley as to the circumstances of his being shot and identifying the Defendant as the person who shot him.").)

As a result, the Michigan Court of Appeals found that "the record does not support defendant's claim that trial counsel's cross-examination of the victim fell below an objective standard of reasonableness." (ECF No. 11-10, PageID.635.) Moreover, the court noted that whether or how to impeach a witness is clearly a matter of trial strategy that it "will not assess with the benefit of hindsight." (*Id.* (citing *In re Ayres*, 608 N.W.2d 132, 140 (Mich. 1999); *People v Flowers*, 565 N.W.2d 12, 15 (Mich. 1997)).) Accordingly, the Michigan Court of Appeals reasonably rejected Smith's second claim as the scope and content of cross-examination falls squarely within a trial counsel's strategic decision-making. *See, e.g.*, *Bailey v. United States*, No. 14-5657, 2015 U.S. App. LEXIS 23770, at *4 (6th Cir. July 15, 2015).

### 3. Advising Smith to Waive his Right to a Jury Trial

Next, Smith claims that his counsel was ineffective when he advised Smith to waive his right to a jury trial. (ECF No. 17, PageID.969–971 (Claim 5).)

The Michigan Court of Appeals also rejected this claim on the merits, reasoning "that [Smith] and trial counsel opted for a bench trial because the trial court might understand better than a jury the likelihood that the victim's brain injury had caused him to repeatedly misidentify [Smith] as the assailant." (ECF No. 11-10, PageID.635.) Likewise, Smith and his counsel opted for a bench trial because they believed Ridley was a "sympathetic victim" and hoped that the trial court "would be less likely than a jury to credit the victim's testimony on the basis of sympathy." (*Id.*)

16

So, the court of appeals concluded, Smith did "not overcome the strong presumption that selecting a bench trial in this case constituted sound trial strategy." (*Id.* (citing *People v. Armstrong*, 806 N.W.2d 676, 681 (Mich. 2011).)

This Court finds no unreasonableness in the court of appeals' analysis here. The decision to advise a defendant to waive a jury and proceed with a bench trial is a "classic example of strategic trial judgment" for which *Strickland* requires deferential judicial scrutiny, particularly on habeas review. *See Cameron v. Rewerts*, 841 F. App'x 864, 867 (6th Cir. 2021); *see also Walendzinski v. Renico*, 354 F. Supp. 2d 752, 758 (E.D. Mich. 2005) (citation omitted). Trial counsel's advice to Smith here "constitutes a conscious, tactical choice between two viable alternatives." *Id.*; *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003) ("[The petitioner's] attorney could have reasonably believed that it was better strategy for [the petitioner] to be tried by the judge rather than a jury, and [the petitioner] has failed to offer any evidence to the contrary.").

Smith has presented no evidence suggesting that the bench trial he received was any less fair than a jury trial or that the trial judge was biased against him in any way. *Willis*, 351 F.3d at 746. Given the evidence presented during the bench trial, there is not a reasonable probability that a jury would have acquitted Smith after hearing the same evidence. *Walendzinski*, 354 F. Supp. 2d at 758 ("[T]rial counsel's advice to petitioner to waive a jury trial and to proceed with a non-jury trial did not prejudice petitioner, where it was unlikely that a jury would have acquitted petitioner after hearing the same persuasive evidence that the trial court heard."). So Smith's claim fails.

17

## 4. Failure to Present an Alibi

Smith next says that his counsel was ineffective when he failed to investigate/present an alibi defense on Smith's behalf. (ECF No. 17, PageID.974–975 (Claim 5).) Indeed, before trial started, defense counsel filed a notice of alibi including Angie Anderson and Kimberly Smith. (ECF No. 11-5, PageID.373.) But when trial started, neither Angie nor Kimberly appeared. Defense counsel told the trial court that both witnesses were sick, and the court gave counsel four days to locate them. (ECF No. 11-7, PageID.533–539.) But they never appeared. Smith then testified that on December 6, 2013, he was visiting Kimberly's house during the assault. (ECF No. 11-8, PageID.553.)

Based on this information, the Michigan Court of Appeals found that Smith "did not overcome the strong presumption that counsel acted reasonably in attempting to present and establish the alibi defense." (ECF No. 11-10, PageID.635.) Moreover, said the court, "there is nothing in the record to indicate how these alibi witnesses would have testified at trial." (*Id.*) So, even assuming Smith's counsel's performance "fell below an objective level of reasonableness in not procuring the alibi witnesses for trial, defendant cannot establish the necessary prejudice element to support his claim of ineffective assistance because there is no evidence that the witnesses would have supported an alibi." (*Id.*)

Again, this Court agrees. Even if counsel's "less than complete" effort to present Smith's alibi constituted deficient performance, *Avery v. Prelesnik*, 548 F.3d 434, 437 (6th Cir. 2008), given AEDPA deference, there is no basis to disrupt the

Michigan Court of Appeals conclusion that the testimony of these two witnesses was unlikely to alter the result. (ECF No. 11-10, PageID.635); *see also Taylor v. Patel*, No. 20-1381, 2021 U.S. App. LEXIS 24142 at *19 (6th Cir. Aug. 11, 2021) ("Although failure to contact and present an alibi witness can constitute deficient performance, if the deficiency could not have affected the outcome of the trial, it does not warrant habeas relief.") (internal citations omitted).

Further, this is not an instance where Smith's counsel failed to locate or contact these witnesses—rather, they were contacted and simply refused to testify. At first, the witnesses both claimed to be sick during the first two trial dates. (*See* ECF No. 11-7, PageID.533–539; ECF No. 11-8, PageID.544–545, 566.) When asked about their absence on cross-examination, Smith testified that he had been in contact with Kimberly, but that she was too scared to testify. (*See* ECF No. 11-8, PageID.567 ("Actually I talked to Kim last night and what is was, was she has to live there and I don't."); *id.* ("Q: It's not that she's scared to come in and commit perjury, is it? A: It might be 'cause she's scared of some other reason, sir.").) Through this line of questioning, it was also revealed that Smith sent a friend to talk with Kimberly and Angie in the hopes of convincing them to testify, but they refused. (*Id.*) Given both the complete reluctance of the alibi witnesses to testify and the unpredictability of what they might say, it was reasonable for the state court to find that counsel did not perform deficiently by failing to take further steps to compel the witnesses' testimony and that his choice did not cause prejudice.

### 5. Failure to Move to Suppress Identification Testimony

Next, Smith asserts that his counsel was ineffective for failing to move to suppress Ridley's identification testimony when police reports indicate that Ridley was only shown a single photo lineup. (ECF No. 17, PageID.980–981 (Claim 7)); *see* ECF No. 23-12, PageID.1824 ("Officer Person then showed a single photo to the victim.").)

Unlike the prior claims in Smith's petition addressed thus far, this claim was not raised on direct appeal, but rather in his motion for relief from judgment. (ECF No. 23-12.) In denying Smith's motion, the trial court found that the pretrial identification procedure was not unduly suggestive because it was apparent "that an independent basis for defendant's identification existed." (ECF No. 23-15, PageID.1848.) The court found that Ridley had a pre-existing relationship with Smith, that he and Smith were alone together in the vacant home, that the identification procedure occurred about a month after the shooting when Ridley recovered from his coma, and that Ridley had previously identified the shooter as "Buddy" at the scene, which "was the name by which [Ridley] knew [Smith]." (*Id*. at PageID.1847–1849.)

Due process "protects the accused against the introduction of evidence . . . obtained through unnecessarily suggestive procedures." *Moore v. Illinois*, 434 U.S. 220, 227 (1977). To determine whether an identification procedure violates due process, courts look first to whether the procedure was impermissibly suggestive. *Neil v. Biggers*, 409 U.S. 188, 198 (1972). If so, courts then determine

whether, under the totality of circumstances, the suggestiveness led to a substantial likelihood of an irreparable misidentification. *Id.* at 199–200.

"Although identifications arising from single-photograph displays are viewed in general with suspicion, the totality of the circumstances may nevertheless negate the corrupting effect of the suggestive identification particularly where the witness knows the defendant." *United States v. Simmons*, 633 F. App'x. 316, 320–21 (6th Cir. 2015) (internal quotations omitted); *see also United States v. Shields*, 415 F. App'x. 692, 702–03 (6th Cir. 2011) (finding that the use of a single photograph was not impermissibly suggestive where witnesses saw the defendant "numerous times prior to being shown the photograph"). Indeed, "[w]itnesses may have difficulty observing and later identifying a stranger, but they "'are very likely to recognize . . . the people in their lives with whom they are most familiar, and any prior acquaintance with another person substantially increases the likelihood of an accurate identification." *Simmons*, 633 F. App'x. at 321 (internal quotations omitted).

Given the past relationship between Smith and Ridley, the trial court reasonably concluded that there was an independent basis for Ridley's identification of Smith and that it was not the product of an unduly suggestive identification procedure. Likewise, the court reasonably determined that trial counsel was not ineffective for failing to make this meritless objection. *See Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020) (noting that trial counsel is not ineffective for failing to raise a meritless objection). So Smith has not shown that "there was no reasonable

basis" for the state courts' ruling, and his habeas claim on this issue must fail. *See Cullen*, 563 U.S. at 188.

### 6. Failure to Challenge Felony Complaint and Warrant

Smith also claims that his counsel should have moved to dismiss the complaint and warrant on the ground that they contained "absolutely no factual allegations and [are] therefore invalid." (ECF No. 17, PageID.981 (Claim 7).) He also claims that the complaint and warrant both lacked an "official stamp of the court, showing it was never actually filed with the court." (*Id.* at PageID.983.)

Smith first raised this argument in his motion for relief from judgment. (ECF No. 23-12, PageID.1788–1789.) The trial court rejected it, noting that the request for the warrant did include factual allegations, including information that: Ridley identified Smith as the person who shot him, "Mathew Ridley will testify to being present, to the defendant's statements and actions, and to the defendant being armed with a gun and shooting him" (ECF No. 23-12, PageID.1824), and Ridley identified Smith via photograph (ECF No. 23-15, PageID.1849).

This factual finding by the trial court is presumed to be correct on federal habeas review, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e). Smith offers no evidence to rebut the state court's determination. Further, even if there was some technical defect in the warrant, it does not provide Smith a basis for obtaining relief—invalidating his arrest on its own would not have barred his prosecution. *See Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *United States v. Crews*, 445 U.S. 463, 474 (1980); *Dorie v. Phillips*, No. 07-1195, 2010 U.S. Dist. LEXIS

30477, *23 (E.D. Mich. March 8, 2010) ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution."). Thus, the trial court reasonably found that counsel was not ineffective for failing to raise this meritless objection.

### 7. Failure to Challenge Habitual Offender Enhancement

Next, Smith alleges that the prosecutor failed to file a Notice to Seek Enhanced Sentence with the Court, and consequently, asserts that his counsel was deficient in failing to object to him being sentenced as a habitual offender under Michigan Compiled Laws § 769.12. (ECF No. 17, PageID.983–984 (Claim 7).) Smith first raised this argument in his motion for relief from judgment. (ECF No. 23-12, PageID.1790–1791.)

Rejecting this argument, the trial court explained that "Notice of enhancement to fourth habitual offender was included on the felony information, dated January 13, 2024, and the warrant felony, dated January 14, 2014." (ECF No. 23-15, PageID.1850.) So, said the court, because the prosecutor had provided notice of the enhancement, Smith's counsel was not "ineffective for failing to raise a frivolous motion." (*Id.* (citing *People v. Riley*, 659 N.W.2d 611, 615 (Mich. 2003).)

This factual finding by the trial court is presumed to be correct on federal habeas review, absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e). Smith, again, offers no evidence to rebut the state court's determination. In fact, the record confirms that Smith was notified at his preliminary examination that he would be sentenced as a habitual felony offender. (ECF No. 11-2, PageID.310 ("Mr. Smith is served with a habitual offender fourth offense notice.").) Accordingly,

the trial court reasonably found that Smith's counsel was not ineffective for failing to raise a baseless claim.

### 8. Failure to Discover Evidence of Another Suspect

Smith also argued in his motion for relief from judgment (ECF No. 23-12, PageID.1791–1793), and now in his habeas petition (ECF No. 17, PageID.984 (Claim7)), that trial counsel was ineffective for failing to discover evidence of another suspect. Specifically, he says that his counsel failed to investigate a police report that indicated that a third person was present who "is said to have come from behind both the victim and an acquaintance and began shooting." (ECF No. 17, PageID.984.)

The trial court found that Smith's counsel did in fact argue throughout trial that Smith was not the shooter. (ECF No. 23-15, PageID.1850.) But it also found that the particular police report Smith refers to was not clear and did not necessarily implicate any third person. (*Id.*) Thus, said the trial court, Smith "failed to overcome the presumption that counsel was pursuing a sound trial strategy." (*Id.* at PageID.1851.)

This Court agrees. Nothing in the police report states that Ridley ever claimed to be shot by a third person—the opposite, he was adamant that "Buddy" aka Smith was the one who shot him. (ECF No. 11-6, PageID.435; ECF No. 1, PageID.100–102.) And Ridley's statement to the police at the hospital does not mention a third person. (ECF No. 17, PageID.1018–1022.)

Further, there is no basis on which to conclude that trial counsel did *not* investigate a theory that a third person was present who shot Ridley. Indeed, a

feature of counsel's cross-examination of the neighbor and the police officers was to suggest that the vacant house had been used by squatters in the past, and that because there were no doors or windows, it was possible that someone else was in the home at the time of the shooting. (ECF No. 11-6, PageID.409, 417–418, 480–481.) Thus, it was reasonable for the trial court to reject this claim.

### 9. Failure to Object to Prosecutor's Improper Comments

Next, Smith says his counsel failed to object to improper comments made by the prosecutor during closing argument. (ECF No. 17, PageID.985–987.) More specifically, Smith says that the prosecution's comment that Ridley named Smith as the shooter right after being shot and that Ridley's story stayed consistent was improper. (*Id.*) Smith asserts that the evidence shows that Ridley could not name the shooter at the scene and that he testified that he only *assumed* it was Smith who shot him. (*Id.*)

Again, the trial court rejected this argument on the merits and found that "these statements are not inconsistent with the record as [Smith] asserts." (ECF No. 23-15, PageID.1851.) Indeed, "[c]ontrary to defendant's assertion in his motion" the record reveals that "when speaking to police, [Ridley] was able to identify [Smith] . . . as the shooter." (*Id.*) So, "[t]rial counsel could not be ineffective for failing to object to these statements" because these statements were "not inaccurate." (*Id.*)

This Court agrees. It is not improper for a prosecutor to argue reasonable inferences from the evidence presented at trial. *See, e.g.*, *Zarn v. Miniard*, No. 22-1161, 2022 U.S. App. LEXIS 23571, at *14 (6th Cir. Aug. 23, 2022); *United States v.*

*Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)). Ridley testified that he told the neighbor and the police at the scene that Buddy shot him. (ECF No. 11-6, PageID.434–445.) And he never deviated from that assertion. The state court reasonably found that counsel's failure to object here was not deficient performance.

### 10. Failure to Impeach Victim with Evidence of Prior Convictions

Finally, Smith asserts that his counsel was ineffective when he failed to impeach Ridley at trial with his prior convictions. (ECF No. 17, PageID.988–993.) The trial court rejected this argument because Smith did not proffer "any evidence or information regarding [Ridley's] prior conviction that he argues would have been used to impeach [Ridley]." (ECF No. 23-15, PageID.1852.) And it was reasonable for the state court to reject an allegation of ineffective assistance of counsel that lacked any evidentiary proffer to support it. "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Dunn v. Reeves*, 594 U.S. 731, 733–34 (2021) (citing *Burt v. Titlow*, 571 U.S. 12, 23 (2013)).

## B. Sufficiency of the Evidence and the Right to Present a Defense (Claim 3)

Smith's third habeas claim consists of two seemingly unrelated arguments. He asserts that his due process rights were violated when (1) the trial court denied his motion for a directed verdict and (2) the trial court prevented him from testifying why he believed Ridley was falsely accusing him. (ECF No. 17, PageID.957–962.)

Starting with Smith's argument regarding the directed verdict, the Michigan Court of Appeals denied this claim on direct appeal as follows:

Defendant's claim rests on the assertion that the victim was too unreliable to be believed. We reject this view. First, defendant overemphasizes the victim's memory problems. At trial, the victim repeatedly conceded that he could not remember some details of the assault because he had experienced brain injuries. But the victim otherwise consistently described the pertinent facts surrounding the assault, including his recollection that only defendant accompanied the victim inside a prospective drug house, and only defendant stood near the victim when the victim felt pain in his head and heard a gunshot. Second, under the standard for directed verdict, we must view the evidence in a light most favorable to the prosecution. Thus, any discrepancies in the evidence are to be resolved in favor of the prosecution. *People v. Wolf*, 440 Mich. 508, 515 (1992), mod 441 Mich. 1201 (1992). Accordingly, the victim's testimony was sufficient to allow the fact-finder to find beyond a reasonable doubt that defendant committed the charged crimes.

(ECF No. 11-10, PageID.636–37.)

"Due process requires that the prosecution prove every element of a crime beyond a reasonable doubt." *Jones v. Hendrix*, 599 U.S. 465, 487 (2023). "In reviewing the sufficiency of the evidence, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Berry v. Okereke*, No. 24-3071, 2024 U.S. App. LEXIS 14109, at *9 (6th Cir. June 10, 2024) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "A reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Accordingly, the "mere existence of sufficient evidence to convict . . . defeats a petitioner's claim." *Matthews*, 319 F.3d at 788–789.

27

The elements of assault with intent to commit murder are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Warren* (After Remand), 504 N.W.2d 907 (Mich. App. 1993). "Circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of the offense." *Id.* The evidence presented at trial included Ridley's testimony that, without provocation, he was shot in the back of the head when he was standing in front of Smith and that no one else was present. Smith asserts that there were inconsistencies and medical issues undermining the reliability of that testimony. But such problems in a witness' testimony "are irrelevant to the sufficiency of the evidence analysis because they improperly ask [the reviewing court] to weigh the evidence or to assess [the witness's] credibility." *United States v. Sanders*, 404 F.3d 980, 987 (6th Cir. 2005) (citation omitted); *see also Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002) (finding that "attacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence"). The fact that the victim testified to facts that supported each element of the offense is sufficient to defeat Smith's claim. *See Tucker v. Palmer*, 541 F.3d 652, 658–59 (6th Cir. 2008) (collecting cases).

Shifting gears, Smith complains about the trial court's refusal to allow him to testify that Ridley may have been motivated to provide false testimony due to a prior altercation involving Smith's friend.

The Michigan Court of Appeals rejected Smith's claim because it found that the trial court excluded this testimony as hearsay under Michigan Rules of Evidence

602, 801, and 802. (ECF No. 11-10, PageID.636–637.) Thus, it concluded, "the trial court acted within its sound discretion when it ruled that the testimony was not admissible." (*Id.* at PageID.637.)

The record supports the state court's conclusion that Smith wanted to relay information he heard from another source. During his testimony, defense counsel asked Smith, "Do you have any way to account or explain why Mr. Ridley would say these things about you?" (ECF No. 11-8, PageID.561.) Smith began to answer, "I didn't find this out until all of this happened, but a friend of mine got into an altercation." (*Id.*) It was at that point that the prosecutor objected to hearsay, and the Court sustained the objection. (*Id.*) After the objection was sustained, Smith failed to make a proffer of the excluded statement.

Hearsay evidence is excludable even if it may be relevant to a defense. *See McCullough v. Stegall*, 16 F. App'x 292, 295 (6th Cir. 2001); *Durr v. Burt*, No. 16-10628, 2018 U.S. Dist. LEXIS 215335, at *19 (6th Cir. Dec. 21, 2018). The Sixth Amendment "only forbids the operation of a state evidentiary rule preventing a criminal defendant from admitting evidence relevant to his defense when the failure to admit the evidence 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *McCullough*, 16 F. App'x at 295 (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)). "Due process 'does not compel' States to allow 'evidence that is unreliable' or of 'questionable exculpatory value.'" *Mack v. Bradshaw*, 88 F.4th 1147, 1162 (6th Cir. 2003) (quoting *Turpin v. Kassulke*, 26 F.3d 1392, 1398 (6th Cir. 1994)).

29

Given the record before the Michigan Court of Appeals, it reasonably determined that the trial court properly excluded the testimony. *See, e.g.*, *Chambers*, 410 U.S. at 302.

### C. Prosecutorial Misconduct

### 1. Allegations Presented on Direct Appeal (Claim 4)

Smith claims that the prosecutor committed misconduct when he presented an out-of-court statement given by Ridley at the preliminary exam and when he failed to disclose the medications Ridley was prescribed to improve his memory until the time of trial. (ECF No. 17, PageID.963–68 (Claim 4).)

The Michigan Court of Appeals rejected these arguments. As to the former, it found that "the statement was not hearsay because it was not offered to prove the truth of the matter asserted, MRE 801(c); instead, it was offered for impeachment purposes, which is acceptable under MRE 613(a)." (ECF No. 11-10, Page.ID.637.) As for the latter, the court set forth the elements of a *Brady* violation and then found that:

> [D]efendant has failed to establish that the prosecutor possessed before trial the specific information regarding the victim's brain medication. Furthermore, the fact that the victim was taking this medication was elicited by defense counsel at trial. Hence, the trial court, as the fact-finder, was fully aware that the victim was taking medication intended to improve the victim's memory, and defendant fails to show how him having this information any earlier would have impacted the trial. Accordingly, we reject this claim of error.

(*Id.* at Page.ID.638.)

With respect to the out-of-court statement offered at the preliminary exam, the Michigan Court of Appeals applied Michigan law to conclude that the statement was

admissible. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Rather, a federal court is limited to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law regarding the admissibility of evidence are usually not questioned by a federal habeas court "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004); *Seymour v. Walker*, 224 F. 3d 542, 552 (6th Cir. 2000). The Court finds that the admission of Ridley's statement during the preliminary exam for impeachment purposes did not render the proceeding fundamentally unfair.

As for the alleged failure to disclose Ridley's medication, under established law, Smith must demonstrate that (1) the prosecutor suppressed evidence, (2) the evidence is favorable to the defense, and (3) the evidence is material to the case. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963). As to the materiality requirement, Smith "must show that, if the prosecutor had disclosed the suppressed evidence, 'there is a reasonable probability' that the defendant would have been acquitted." *Mack,* 88 F.4th at 1154 (quoting *Strickler v. Greene*, 527 U.S. 263, 281 (1999)).

As the Michigan Court of Appeals correctly concluded, Smith has not made this required showing. There is no indication in the record that either the prosecutor or the police were aware of the list of medications Ridley was taking. Nor was this information suppressed. Indeed, the Court of Appeals noted that Ridley testified

during his cross-examination that he did take several medications and that some of those medications were prescribed to repair his memory. (ECF No. 11-6, PageID.450–452.) And there is no evidence that a comprehensive list of all the medications Ridley was taking—even if that list did include more medications than what he testified to taking—would have changed the outcome of Smith's trial. Accordingly, the Court finds that the state courts reasonably rejected this claim.

### 2. Allegations Presented on Post-Conviction Review (Claims 8 & 9)

Smith asserts that the prosecutor committed misconduct when he failed to disclose: (1) that Officer Person had been charged with evidence tampering and assault, (2) phone records showing that Smith's girlfriend was in a different city at the time of the crime and could not have driven Smith and Ridley to the scene, and (3) an affidavit executed by Brayce Brantley which, Smith claims, would demonstrate he was not the shooter. (ECF No. 17, PageID.993–998 (Claim 8), 998–1001 (Claim 9).) The Court will address each of these issues in turn.

First, the trial court rejected the allegations regarding Officer Person as follows:

> Defendant argued prosecutorial misconduct on direct appeal and in his Standard 4 brief, but not the issues raised in the present motion. Because defendant failed to raise these issues on appeal, he must demonstrate good cause for this failure and actual prejudice.

> Defendant has not demonstrated good cause; however, assuming for sake of argument that he has, his claims similarly fail. "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v. Mesik (On Reconsideration)*, 285 Mich. App. 535, 541 (2009). A defendant was denied a fair and impartial trial when the prosecutor injects issues broader than the defendant's guilt or innocence into the trial. *People v. Dobek*, 274 Mich. App. 58, 63-64

(2007). Generally, prosecutors are afforded wide latitude in arguing facts and drawing reasonable inferences from the presented evidence. *Id*[.] at 66.

First, he alleges that the prosecution failed to disclose impeachment evidence regarding Detroit Police Department ("DPD") Officer Person. He alleges that after trial he read an article after his conviction in which the same Officer Person was accused or charged with tampering with evidence and knowingly providing false information in an unrelated matter.

Due process does not impose a post-conviction obligation on the prosecution to disclose exculpatory evidence to defendant for events that occur after his conviction. *District Attorney's Office for the Third Judicial Dist. v Osborne*, 557 U.S. 52, 68-69 (2009). For this reason, defendant's claim is rejected.

(ECF No. 23-15, PageID.1853.)

Based on this reasoning, Respondent asserts that these three claims are procedurally defaulted. (ECF No. 22.) While the trial court discussed the procedural requirements of Michigan Court Rule 6.508(D)(3) before addressing the claim, it did not clearly and expressly base its rejection of the claim on Smith's failure to comply with that rule. Instead, as the quote shows, the trial court cited the procedural rule's requirements but then addressed the merits. Review of the claim is therefore not procedurally barred. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (*en banc*). Additionally, "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). So the Court will decide Smith's claim on the merits.

Smith provides the Court with a newspaper article indicating that Officer Person and another officer were charged with assaulting a person at a Detroit

restaurant in March 2018 while they were moonlighting as private security guards. (ECF No. 17, PageID.1038; *see also* Hasan Dudar, *2 Detroit cops charged in St. Patrick's Day assault*, Detroit Free Press (May 23, 2018), https://perma.cc/LTE5-NGQT.)[1] But Smith was tried in 2014. As the trial court correctly found, *Brady* does not impose an obligation to disclose exculpatory evidence that comes into existence after a conviction. *Coleman v. Bradshaw*, 974 F.3d 710, 718 (6th Cir. 2020).

The Court next turns to Smith's argument regarding the suppression of phone records. Smith focuses on the prosecution's failure to call ATF Agent S. Brue. Smith claims Brue would have testified that cell phone records showed that his girlfriend, Lyndrea Brooks, was in a different city at the time of the incident, thereby countering a prosecution theory.

In addressing this claim, the trial court reasoned as follows:

> Defendant is mistaken in his contention. Generally, a prosecutor must exercise due diligence to produce an endorsed witness at trial. *People v. Eccles*, 260 Mich. 379, 388 (2004). A prosecutor must notify a defendant of all known res gestae witnesses and all witnesses that it intends to produce at trial. *People v. Cook*, 266 Mich. App. 290, 295 (2005). Where an endorsed res gestae witness is not produced, the trial court may infer that the witness's testimony would have been unfavorable to the prosecution's theory of the case. *People v. Fields*, 450 Mich. 67, 105 (1995). The trial court is not required to instruct a negative inference when the non-produced witness is not a res gestae witness. *People v. Jackson*, 178 Mich. App. 62, 65-66 (1989). There is no indication that the prosecution failed to use due diligence to produce the witness.

---

[1] Though not included in Smith's filings, the Court takes judicial notice that the date of publication of the article Smith cites was May 23, 2018. Fed. R. Evid. 201; *Western & Southern Life Ins. Co. v. JPMorgan Chase Bank, N.A.*, 54 F. Supp. 3d 888, 898–899 (S.D. Ohio 2014); *see also Pearce v. Faurecia Exhaust Sys., Inc.*, 529 F. App'x 454, 459 (6th Cir. 2013); *Logan v. Denny's Inc.*, 259 F.3d 558, 578 (6th Cir. 2001) (taking judicial notice of newspaper article).

(ECF No. 23-15, PageID.1853–1854.)

This claim does not entitle Smith to habeas relief. First, contrary to Smith's assertion, it was not necessary to the prosecutor's theory of the case that Smith and Ridley were driven to the scene at all, let alone by Brooks. During opening statement, the prosecutor stated that the evidence would show that Smith and Ridley went to the abandoned house, without stating how they got there. (ECF No. 11-6, PageID.393.) Then during closing argument, the prosecutor stated, "there's some inconsistencies, but the two of them either walk[ed] to this house at Meade and Goddard, 2408 Meade, or they [were] driven by what I think Mr. Ridley referred to as the Defendant's girlfriend." (ECF No. 11-8, PageID.577.) Evidence showing that Lyndrea Brooks' cellphone was not at the scene only made it more likely that the two men either (1) walked to the house or (2) that they were driven by someone other than Brooks.

Indeed, the prosecutor's theory did not depend on Brooks being the specific individual driving the car to the scene of the shooting. (ECF No. 17, PageID.997.) Both at trial and in his statement to the police, Ridley claimed that he did not know the identity of the woman who drove them to the scene. (*See id.* at PageID.1021.) Brooks' name does not appear on the prosecution witness list. (*Id.* at PageID.1039.) And when the prosecutor questioned Smith about his phone calls with a woman from jail, she was only identified as Smith's "baby's momma," and not by name. (ECF No. 11-8, PageID.569.) Thus, Smith cannot show that any phone records associated with Brooks created a reasonable probability that he would have been acquitted.

35

In short, the state court did not violate federal law in denying Smith discovery on post-conviction review. *See Hayes v. Prelesnik*, 193 F. App'x 577, 584 (6th Cir. 2006); *Davis v. Ludwick*, No. 10-CV-11240, 2013 WL 1212833, *18 (E.D. Mich. March 25, 2013). Nor can this Court order production of, or rely on, the phone records now. *See Cullen*, 563 U.S.at 181–82.

Finally, with respect Smith's claim that the prosecution failed to disclose a police report suggesting the existence of another suspect and Brantley's affidavit, the trial court rejected the claim as follows:

> The evidence is not newly discovered. First, defendant admits that the evidence is not newly discovered in his motion. Furthermore, a letter attached to defendant's motion as an appendix indicates that appellate counsel was aware of the alleged newly discovered evidence and followed up with the alleged witness in an effort to corroborate the claims in the affidavit. This correspondence between appellate counsel and the alleged witness is dated October 16, 2016, and appellate counsel inquired as to a number of claims made in the affidavit. Defendant's appeal was decided on January 26, 2017.
>
> Defendant has not included any attachments to his motion to indicate whether defendant or the alleged witness followed up on appellate counsel's request to corroborate the affidavit. Because of this, the Court can infer that counsel did not pursue this issue as a matter of trial strategy; "Appellate counsel may legitimately winnow out weaker arguments in order to focus on those arguments that are more likely to prevail." *People v. Uphaus*, 278 Mich. App. 174, 186-187 (2008). The test for ineffective assistance of appellate counsel is the same test as a claim of ineffective assistance of trial counsel. *Id.* at 186. A defendant must still overcome the strong presumption that counsel's performance constituted a sound trial strategy. *Strickland*, 466 U.S. at 690.
>
> Even if the evidence was newly discovered, defendant has failed to make a showing that the evidence would have made a different result probable on retrial. In addition, it is apparent that defendant could have raised this claim in his Standard 4 brief on direct appeal. Defendant has failed to satisfy the burden of establishing entitlement to relief on the basis of newly discovered evidence. MCR 6.508(D).

(ECF No. 23-15, PageID.1854–55.)

This determination was a reasonable application of controlling law. First, even assuming the Brantley affidavit could be considered new evidence, the Supreme Court has stated that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see In re Ricks*, No. 24-1691, 2025 U.S. App. LEXIS 781, at *2 (6th Cir. Jan. 13, 2025). And, to the extent that Smith argues Brantley's affidavit was suppressed by the prosecution, it is dated September 30, 2016. Put simply, it did not exist at the time of trial and thus, could not have been "suppressed."[2] So, again, the trial court's rejection of this claim was reasonable.

Further, there is no evidence that the prosecution suppressed evidence of an alternative suspect. Smith has provided no evidence that the Detroit Police Report in question was not provided to defense counsel before trial. And as already discussed, the report itself does not clearly indicate that there was evidence of an unidentified

---

[2] It is also worth noting that the contents of the affidavit are quite suspect. Brantley says he knew Smith to be a drug dealer, even though he first met Smith in prison. (ECF No. 17, PageID.1040–1041 (Affidavit).) And three years after the incident, Brantley says he somehow remembered that he was driving to the Hamtramck Projects with his girlfriend. (*Id.*) He says he heard shots around 6:30 pm and saw a man running from a vacant house on Meade and Goddard. (*Id.*) When Brantley arrived at the projects, he saw Smith was already there selling drugs and drinking. (*Id.*) All told, Brantley's affidavit does not support a claim that the prosecutor suppressed evidence. *See Carter v. Mitchell*, 443 F.3d 517, 539 (6th Cir. 2006).

third person. The report was a narrative summary provided by one officer to another officer an hour or so after the incident. But the only first-hand account of what occurred in the abandoned house came from Ridley, who consistently claimed that Smith was the person who shot him, and that no other person was present. So, again, the trial court's rejection of this claim did not violate clearly established federal law.

### D. Cumulative Error (Claim 6)

Smith asserts in his sixth habeas claim that the cumulative effect of all his asserted errors denied him his right to a fundamentally fair trial. (ECF No. 17, PageID.978–979 (Claim 6).) It is not clearly established by Supreme Court case law that "distinct constitutional claims" can "be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002); *see also Kennard v. Bauman*, No. 23-1984, 2024 U.S. App. LEXIS 10641, at *3 (6th Cir. May 1, 2024) (explaining that "[w]e have repeatedly held that the Supreme Court has not clearly established a cumulative-error theory of relief"); *Webster v. Horton*, No. 19-1553, 795 F. App'x 322, 328 (6th Cir. Oct. 24, 2019) (same).

### E. Pending Motions

Recently, Smith filed a motion for sanctions (ECF No. 25) and a motion for an evidentiary hearing (ECF No. 26). Both are denied.

In his motion for sanctions, Smith asserts that Respondent's answer to his petition continues to perpetuate the misconduct of the trial prosecutor. (ECF No. 25, PageID.2203 ("Thus the Respondent is simply not telling the truth in its adoption of the State Court's erroneous factual findings.").) Rule 11 sanctions "may be imposed if

a reasonable inquiry discloses the pleading . . . is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Meritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010). For the reasons stated in denying relief on Smith's claims, including his prosecutorial misconduct claims, there is no basis for finding the response brief violated Rule 11. So Smith's motion for sanctions is DENIED.

Nor is an evidentiary hearing warranted. Smith seeks a hearing to support his claims of ineffective assistance of counsel. (ECF No. 26.) But the Court has determined that the state court adjudication of those claims did not unreasonably apply clearly established federal law under 28 U.S.C. § 2254(d). *See Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018). And in making that determination, the Court's review is limited to the record before the state court." *Cullen*, 563 U.S. at 181–82. Thus, Smith's motion requesting an evidentiary hearing is DENIED.

## IV. Conclusion

For these reasons, Smith's petition for a writ of habeas corpus (ECF No. 17), motion for sanctions (ECF No. 25), and motion for an evidentiary hearing (ECF No. 26) are DENIED. A separate judgment will follow.

SO ORDERED.

Dated: March 19, 2025

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE